# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD THOMPSON, | : | Case No. 2:22-cv-682 |
| Plaintiff, | : | |
| vs. | : | District Judge James L. Graham |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| JAMES SKAGGS, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

Edward Thompson, an incarcerated person proceeding *in forma pauperis* and without the assistance of counsel, has filed a civil action. 42 U.S.C. § 1983. (ECF Nos. 1-1, 4). He alleges that James Skaggs, a corrections officer at Ross Correctional Institution, violated his constitutional rights. (ECF No. 1-1). He seeks compensatory damages. (ECF No. 1-1, PageID 17).

The matter is currently before the undersigned Magistrate Judge to conduct the initial screen required by law. 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e)(2). For the reasons that follow, the Undersigned **RECOMMENDS:**

1. that Thompson be permitted to **PROCEED** at this time on his excessive force claim against Skaggs in his individual capacity.

2. that the remaining claims, including any claims against Skaggs in his official capacity, be **DISMISSED**.

I.    **Initial Screening Standard**

Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is also proceeding *in forma pauperis*, the Court is required to conduct an initial screen of his Complaint. 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e)(2). The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is also required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by

lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f)). Even with such a liberal construction, a pro se complaint must still adhere to the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory.'" *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

## II. Claims and Parties

Thompson sues Skaggs under 42 U.S.C. § 1983. (ECF No. 1-1 ("Complaint"), PageID 11). To state a cause of action under § 1983, a plaintiff must allege: "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted).

Thompson alleges that Skaggs is a corrections officer and suggests that he is employed by the Ohio Department of Rehabilitation and Correction ("ODRC"). (Complaint, PageID 10). It appears that the events described in the Complaint occurred after Skaggs suspected Thompson of swallowing contraband in October 2020. (*Id.*, PageID 13, 15, 24). According to Thompson, after a search of his cell and his person, Skaggs ordered him to open his mouth. (*Id.*, PageID 13, 20). Thompson complied, raising his hands, opening his mouth, and sticking out his tongue. (*Id.*, PageID 13). Skaggs then sprayed mace directly into Thompson's throat and eyes, causing him to choke and causing temporary blindness and other injuries. (*Id.*, PageID 13, 17).

Thompson says he was not resisting before or after the incident. (*Id.*, PageID 13, 15). Thompson was then taken for medical care and placed on "[defecation] watch" for two days, after which he was held in "the hole" for a week. (*Id.*, PageID 13-14).

Thompson identifies two main issues in his Complaint. First, he raises an apparent excessive force claim against Skaggs under the Eighth Amendment. (*Id.*, PageID 11, 13, 15, 17, 19-20). Second, Thompson alleges that his personal property was not properly secured in the aftermath of this incident and was lost or stolen, presumably in violation of the Fourteenth Amendment's Due Process Clause. (*Id.*, PageID 14, 17-19).

Thompson sues Skaggs in both his official and individual capacities. (*Id.*, PageID 10). He seeks damages for physical and emotional injuries, as well as compensation for his lost property—$200,000 in total. (*Id.*, PageID 17).

**III. Discussion**

At this point in the case, without the benefit of an answer or briefing from the parties, it appears that Thompson should be permitted to proceed with his excessive force claim against Skaggs in his individual capacity. The remainder of Thompson's claims, for the reasons discussed below, should be dismissed.

    A.    <u>Claims against Skaggs in his Official Capacity</u>

As noted above, Thompson sues Skaggs in his official capacity, as well as in his individual capacity. (Complaint, PageID 10). The official capacity claims for monetary damages cannot proceed, as such claims are barred by the Eleventh Amendment to the

4

United States Constitution. *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018); U.S. CONST. amend. XI.

"The Eleventh Amendment 'denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent.'" *Id*. (quoting *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464 (1945)). "The [Supreme] Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Maben*, 887 F.3d. at 270, (quoting *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). Thus, "because Ohio has not consented to suits in federal court nor has Congress abrogated Ohio's immunity under § 1983," the State of Ohio is immune from suit. *Smith v. DeWine*, 476 F. Supp. 3d 635, 652 (S.D. Ohio 2020). Although Thompson has not directly sued the State of Ohio here, he has sued an employee of the State of Ohio.

The State of Ohio's immunity extends to suits for monetary damages against state employees who are sued in their official capacity, because such a suit is the same as a suit against the state itself. *See Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (citing *Graham*, 473 U.S. at 165) ("An official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents.").

Moreover, "claims against the state and its agencies cannot be maintained under § 1983 [because] these entities are not suable 'persons' for purposes of § 1983." *Kanuszewski v. Michigan Dep't of Health & Hum. Servs*., 927 F.3d 396, 417 n.11 (6th Cir. 2019) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64-66 (1989)). State

5

employees acting in their official capacities also are not suable "persons" under § 1983, because, as noted above, such a suit is the same as a suit against the state. *Walz v. Tennessee Dep't of Corr.*, No. 1:11-cv-103, 2012 WL 252803, at *3 (M.D. Tenn. Jan. 25, 2012).

Corrections Officer Skaggs is a state employee. (Complaint, PageID 10). *See White v. Bragg*, 5th Dist. Richland No. 2005-Ohio-488, ¶ 16, 2005 WL 299818 ("a corrections officer employed by the Ohio Department of Rehabilitation and Correction[] is a State employee."). Thus, Thompson's claims for monetary damages against him in his official capacity are barred by the Eleventh Amendment, and necessarily fail because he is not in that capacity a suable "person." Accordingly, the Undersigned **RECOMMENDS** that Thompson's claims against Skaggs in his official capacity be **DISMISSED** for failure to state a claim.

B.     Personal Property Claim

As mentioned above, Thompson alleges that his personal property was not properly secured in the aftermath of the incident with Skaggs and was lost or stolen, presumably in violation of the Fourteenth Amendment's Due Process Clause. (Complaint, PageID 14, 17-19). Thompson says:

> None of my property was documented, no property slip was brought to me to sign and my property was not taken to the vault at all. It was placed in a closet in the C-Section of Housing Units 5A and 5B. . . . My property was [later] located in a closet after it has been ransacked and undocumented. I submitted a theft/loss report to Sgt. Taylor in 5B housing unit but heard nothing about it.

(*Id.*, PageID 14). There is no further information in the Complaint about who allegedly took Thompson's property.

Thompson fails to state a claim on which relief can be granted. Any claim against other inmates for taking Thompson's personal property cannot succeed under § 1983, because a § 1983 claim is only available against a person acting under color of state law. *Hunt*, 542 F.3d at 534. A § 1983 claim is generally not available against private actors. *Weser v. Goodson*, 965 F.3d 507, 515-16 (6th Cir. 2020). While there are exceptions to this rule, *id.* at 516, Thompson does not raise any. Therefore, any claims against other inmates for taking Thompson's personal property should be dismissed. *Perdue v. Ohio Dep't of Corr.*, No. 1:13-cv-878, 2014 WL 661707, at *3 (S.D. Ohio Feb. 19, 2014) (dismissing § 1983 claim against inmates where the complaint did not allege that inmates acted under color of state law); *Lane v. Warden, Noble Corr. Inst.*, No. 2:20-cv-5492, 2022 WL 160061, at *3 (S.D. Ohio Jan. 18, 2022) (dismissing § 1983 claim against a fellow inmate, because he was "a private party, he did not act under color of law and therefore is outside the scope of Section 1983").

Any claim against Skaggs for not securing, or for allowing other inmates to take, Thompson's personal property likewise cannot succeed. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (citing *Hudson v. Palmer,* 468 U.S. 517, 531-33 (1984) and *Lucien v. Johnson,* 61 F.3d 573, 575-76 (7th Cir. 1995)) ("Plaintiff's allegation that other inmates stole his property fails to state a claim against the prison officials because the prison's negligence in allowing the theft is not a 'taking' for purposes of the Fourteenth Amendment.").

7

Finally, to the extent the Complaint could be read to suggest that Skaggs himself took Thompson's personal property without due process of law, it does adequately plead such a claim. The United States Supreme Court has held that a plaintiff "deprived of property through a random and unauthorized act" of a governmental employee does not state a due process claim "merely by alleging the deprivation of property." *Darling v. Lake Cnty. Bd. of Comm'rs*, No. 1:12-cv-194, 2012 WL 1902602, at *17 (N.D. Ohio May 25, 2012) (citing *River City Capital, L.P. v. Bd. of Cnty. Com'rs, Clermont Cnty., Ohio,* 491 F.3d 301, 306 (6th Cir. 2007) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981))). A plaintiff must also plead "that state remedies for redressing the wrong are inadequate." *Perdue*, 2014 WL 661707, at *5 (quoting *Vicory v. Walton,* 721 F.2d 1062, 1066 (6th Cir. 1983) and citing *Hudson,* 468 U.S. 517 and *Parratt,* 451 U.S. 527). State remedies in this context may include, among other things, "a judicial remedy in tort." *Pilgrim v. Littlefield*, 92 F.3d 413, 417 (6th Cir. 1996); *see also Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999) (citing *Hudson*, 468 U.S. at 534-36) ("State tort remedies generally satisfy the postdeprivation process requirement of the Due Process Clauses.").

Where a "Plaintiff has not alleged any facts which indicate that the state post-deprivation remedies are inadequate or unavailable to redress the wrong," a property claim like this one must be dismissed. *Thompson v. Esham*, No. 1:15-cv-553, 2016 WL 692542, at *1 (S.D. Ohio Feb. 22, 2016) (citing *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)); *Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985). Thompson has not done so here. Accordingly, the Undersigned **RECOMMENDS** that Thompson's personal property claim be **DISMISSED**.

    C.    <u>Other Claims Suggested in the Pro Se Complaint</u>

        1.    <u>Conditions of Confinement Claim</u>

Thompson alleges that the day after he was sprayed with mace and taken to "medical," he "was denied the ability to brush [his] teeth and soap to wash [his] hands" before eating. (Complaint, PageID 14). He also alleges that he was thereafter placed in "the hole" (segregation), and that "[t]he entire week I was in the hole I was not given the basic necessities I am entitled to such as 3 pairs of socks, underwear, nor personal hygiene items such as soap, deodorant, toothpaste and toothbrush." (*Id*., PageID 14).[1] *See generally Tribell v. Mills*, 25 F.3d 1050 (6th Cir. 1994) (unpublished table decision) (noting that administrative segregation is commonly referred to as "the hole"). Thompson "didn't receive these items until 2 weeks after [he] was released from [defecation] watch." (Complaint, PageID 14).

It is well-settled that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Pfeiffer v. Butler Cnty. Sheriff Dep't*., No. 1:10-cv-672, 2012 WL 1203557, at *8 (S.D. Ohio Apr. 10, 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The Eighth Amendment, which protects prison inmates from "cruel and unusual punishments," U.S. CONST. amend. VIII, also protects them against "extreme deprivations" that deny "the minimal civilized measure of life's necessities" while in prison. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Wilson*

---

[1] Thompson may be referring to ODRC Policy No. 61-PRP-02 concerning the clothing that is issued to inmates. Available at: https://drc.ohio.gov/Portals/0/Policies/DRC%20Policies/61-PRP-02%20(Jan%202020).pdf?ver=2020-01-07-111904-447 (accessed May 10, 2022).

9

*v. Seiter*, 501 U.S. 294, 298 (1991) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). These claims are sometimes referred to as conditions of confinement claims.

"To state a claim for violation of the Eighth Amendment arising from conditions of confinement, a prisoner must plead (1) that 'the failure to protect [the inmate] from risk of harm [was] objectively sufficiently serious,' and (2) that 'the official acted with deliberate indifference to inmate health or safety.'" *Taylor v. Larson*, 505 F. App'x 475, 477 (6th Cir. 2012) (quoting *Mingus v. Butler,* 591 F.3d 474, 480 (6th Cir. 2010)). To establish a claim for damages under the Eighth Amendment, a plaintiff must also allege some type of physical injury. *See* 42 U.S.C. § 1997e(e); *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) ("[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward.").

As noted, "*extreme* deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9 (emphasis added). "Routine discomforts of prison life do not suffice." *Fisher v. Fed. Bureau of Prisons*, 484 F. Supp. 3d 521, 531 (N.D. Ohio 2020) (citations omitted). Likewise, "[a]llegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *Pena v. Brown*, No. 2:20-cv-250, 2021 WL 4350124, at *5 (W.D. Mich. Sept. 23, 2021) (citations omitted).

10

Conditions of confinement claims "are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017). "In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 733 (9th Cir. 2000)). For example, "[a] filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978).

The complete denial of a personal hygiene product for an extended period of time can, in some extreme circumstances, support a conditions of confinement claim. *See, e.g., Flanory*, 604 F.3d at 255-56 (allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems were sufficient to state an Eighth Amendment claim). But "[s]hort term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like do not rise to the level of a constitutional violation." *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989). Thompson's allegation that he was not permitted to brush his teeth or wash his hands before a meal while in the medical setting falls into this category of temporary, short-term deprivations and does not state a claim. (Complaint, PageID 14).

Although the exact timeframe is unclear, Thompson's allegation that he was deprived of personal hygiene items for two or three weeks (*id.*, PageID 14) does not state

11

a claim of constitutional magnitude. *See Hailey v. Bogota*, No. 20-12583, 20-12584, 2021 WL 509899, at *6 (E.D. Mich. Feb. 11, 2021) (concluding that plaintiff failed to state an Eighth Amendment claim where he alleged "he was held in isolation for two weeks, during which he was deprived of his personal possessions, adequate food, hygiene supplies, and privileges such as access to the yard, telephone, and mail"); *Annabel v. Michigan Dep't of Corr.*, No. 1:14-cv-756, 2014 WL 4187675, at *17 (W.D. Mich. Aug. 21, 2014) ("courts have recognized that the deprivation of . . . hygiene items for two weeks does not rise to the level of an Eighth Amendment claim"); *Crump v. Janz*, No. 1:10-cv-583, 2010 WL 2854266, at *4 (W.D. Mich. July 19, 2010) (holding that lack of hygiene items and other personal property for 35 days did not establish an Eighth Amendment violation).

With respect to Thompson's allegation that his allotted 3 pairs of socks and underwear were not replaced while he was in segregation (Complaint, PageID 14), the Undersigned first notes that this allegation is not of a total denial of clothing or of socks and underwear. *Cf. Oxendine v. Bryan*, No. 3:20-cv-764, 2020 WL 5702524, at *3 (M.D. Tenn. Sept. 24, 2020) (plaintiff stated a claim "in connection with being kept naked where she could be seen by staff and other inmates on multiple occasions, including when being sedated"). To the extent that Thompson is alleging that his prison-issued/approved socks and underwear were put in storage (and then stolen) and not replaced for two weeks, he fails to state a sufficiently serious deprivation. *See Glover v. Grant Cnty. Det. Ctr.*, No. CIV.A. 10-88, 2010 WL 2804054, at *4 (E.D. Ky. July 15, 2010) ("Glover's inability to change his underwear and socks as often as he liked does

12

not amount to violation of constitutional proportions."); *Locke v. McMinn Cnty. Jail*, No. 1:22-cv-2, 2022 WL 214551, at *6 (E.D. Tenn. Jan. 24, 2022) (dismissing claim because the denial, for more than two weeks, "of additional clothing at government expense did not pose a grave risk to Plaintiff's health"); *McCorkle v. Walker,* 871 F. Supp. 555, 557 (N.D.N.Y. 1995) (Eighth Amendment was not offended when a prisoner was unable to change his underwear for 15 days). *See also Johnson v. Jones*, No. 1:18-cv-43, 2019 WL 340108, at *4 (S.D. Ohio Jan. 28, 2019), *adopted sub nom. Johnson v. Humphrey*, 2019 WL 861246 (S.D. Ohio Feb. 22, 2019) ("Plaintiff's claim that Defendant Eaches threatened to confiscate his underwear and socks while in segregation also fails to state a claim for relief for any constitutional violation. As noted by Defendants, unruly inmates often use their clothing to clog the toilet or sink, causing the cell to flood.").

Moreover, Thompson does not assert that the delay in replacing his socks and underwear caused him any injury. *See Flanory*, 604 F.3d at 254 (requiring more than *de minimus* injury to proceed on an Eighth Amendment claim). For all these reasons, the Complaint fails to state a claim under the Eighth Amendment for denial of hygiene supplies or socks and underwear. The Undersigned therefore **RECOMMENDS** that any conditions of confinement claim be **DISMISSED**.

    2. <u>Denial of Medical Care</u>

Thompson alleges that after the mace incident with Skaggs, he:

> was taken to medical [and] was allowed to rinse out my eyes for only a few seconds, I was then pulled away from the water. I told them I needed to rinse my eyes out some more but I was denied. Ever[] since I have been having complications with my eyes such as itching and dryness/burning.

(Complaint, PageID 16). This allegation may seek to raise a claim for deliberate indifference to a serious medical need.

"The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "A deliberate-indifference claim under the Eighth Amendment has an objective and a subjective component." *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021) (citing *Richmond v. Huq*, 885 F.3d 928, 937-38 (6th Cir. 2018)). "To meet the objective component, the plaintiff must show that the medical need is 'sufficiently serious.'" *Brawner*, 14 F.4th at 591 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "To meet the subjective component, the plaintiff must show that 'an official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Brawner*, 14 F.4th at 591 (quoting *Farmer*, 511 U.S. at 837). In other words,

> The subjective component requires a plaintiff to show that "each defendant subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk by failing to take reasonable measures to abate it." [*Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 568 (6th Cir. 2020)] (quoting *Rhinehart* [*v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018)]. This is a high standard of culpability, "equivalent to criminal recklessness." *Id.*

*Greene v. Crawford Cnty., Michigan*, 22 F.4th 593, 605-06 (6th Cir. 2022).

The Sixth Circuit also "distinguish[es] between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th

14

Cir. 1976). "Where a prisoner alleges only that the medical care he received was inadequate, 'federal courts are generally reluctant to second guess medical judgments.'" *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake,* 537 F.2d at 860).

Thompson's claim that he was allowed to wash his eyes out, but not as long as he wanted (Complaint, PageID 16), is of the latter type and fails to state a claim under the circumstances outlined in the Complaint. First, Thompson does not allege that it was Skaggs who denied his request to continue to rinse his eyes out, which means that he has not stated a claim *against Skaggs*, the sole defendant. (*See* Complaint, PageID 16 (referring to having told "them" he needed more water)). *See Johnson v. Mahlman*, No. 1:16-cv-503, 2016 WL 3511954, at *3 (S.D. Ohio June 6, 2016), *adopted in part, rejected in part*, 2016 WL 3434010 (S.D. Ohio June 22, 2016) (dismissing claim for denial of medical care for failure to state a claim: "to the extent that plaintiff seeks to bring a claim based on the alleged denial of medical or decontamination care after the pepper-spraying incident, he has not alleged any facts even remotely suggesting that either of the two named defendants played any role in that matter [and] has not stated an actionable claim under § 1983 against the defendants based on the theory of deliberate indifference to his serious medical needs.").

Further, this Court has held that "the effects of OC spray, standing alone, fail to indicate an objective, 'sufficiently serious' medical need giving rise to constitutionally-mandated medical treatment where the inmate has access to soap and water to decontaminate." *Woodard v. Winters*, No. 2:16-cv-704, 2018 WL 3020336, at *11 (S.D.

15

Ohio June 18, 2018), *adopted*, 2018 WL 4610511 (S.D. Ohio Sept. 26, 2018). Here, Thompson alleges he was briefly given access to water but his access was limited at that time. (Complaint, PageID 16).

Allegations that a plaintiff was denied all access to water or other decontamination for a substantial length of time after being pepper sprayed can, under some circumstances, support a claim for deliberate indifference to a serious medical need. *See, e.g., Williams v. Prisoner Transp. Servs., LLC*, No. 3:19-cv-599, 2020 WL 7027506, at *12 (M.D. Tenn. Nov. 30, 2020) ("Plaintiff has sufficiently alleged that Defendants' failure to provide him a shower after spraying him with pepper spray and requiring him to sit in human excrement and urine for four days was an unconstitutional deprivation of basic hygiene. [He] has also sufficiently asserted that he suffered an injury as a result of that deprivation, in that he was required to sit in sweltering heat with the pepper spray burning his eyes, nose, and skin for two days because he could not wash it off"); *Jennings v. Fuller*, 659 F. App'x 867, 870 (6th Cir. 2016) (discussing a situation where plaintiff was tied "face-down for three hours on a restraint bed" in a blood and pepper spray soaked spit hood, with no medical attention, even though plaintiff screamed he had emphysema and trouble breathing, causing him to lose consciousness several times).

But those are not the allegations here. Thompson alleges that he was given water to wash out of his eyes, but he needed more, and he has ever since suffered from itching and dryness/burning in his eyes. (Complaint, PageID 16-17). This allegation does not rise to the level of a sufficiently serious medical need and fail to state a claim under §1983. *See Bruin v. White*, No. 5:16-cv-105, 2020 WL 4926540, at *6 (W.D. Ky. Aug.

16

21, 2020) (agreeing that plaintiff "has not alleged any sufficiently serious medical need ignored or inflicted by" the defendant where he alleged that she "poured water into his eyes to decontaminate after pepper spray was used"); *McGuire v. Union Cnty. Jail*, No. 4:13-cv-P28, 2013 WL 4520282, at *5-6 (W.D. Ky. Aug. 26, 2013) (plaintiff failed to show how his complaints—"that his eyes hurt and nose ran after being pepper sprayed"—"rose to the level of a 'sufficiently serious' medical need to give rise to an Eighth Amendment claim"); *Censke v. Ekdahl*, No. 2:08-cv-283, 2009 WL 1393320, at *8 (W.D. Mich. May 18, 2009) (plaintiff's complaints of "burning in his nose, lungs, eyes and skin . . . do not constitute a serious medical need for purposes of the Eighth Amendment"). *See also Reeves v. Sweet*, No. 1:04-cv-605, 2005 WL 2417659, at *4 (W.D. Mich. Sept. 30, 2005) ("although [p]laintiff complains that he had breathing difficulties [after exposure to pepper spray], he has failed to present facts demonstrating that those difficulties were sufficiently different in degree or type from those experienced by others exposed to the spray, and he has asserted no adverse medical consequences from the exposure").

For these reasons, the Undersigned **RECOMMENDS** that any claim for the denial of medical care after the mace incident with Skaggs be **DISMISSED**.

### 3. Deprivation of Liberty Interest

Thompson asserts at one point in his Complaint that he was "deprived of a liberty interest [without] due process." (Complaint, PageID 11). Although this claim is not explained further, the Undersigned will discuss such a claim—which may arise from being held in segregation—in the interest of completeness.

17

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or that "will inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Williams v. Wilkinson*, 51 F. App'x. 553, 556-57 (6th Cir. 2002).

Confinement in segregation generally does not rise to the level of an "atypical and significant" hardship implicating a liberty interest except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to an *indefinite* administrative segregation" or that such confinement was excessively long in duration. *Joseph v. Curtin*, 410 F. App'x. 865, 868 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in original); *see also Harris v. Caruso*, 465 F. App'x. 481, 484 (6th Cir. 2012) (holding that the prisoner's 8-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process"). *Cf. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).

Here, to the extent that Thompson is alleging a violation based on "the entire week [he] was in the hole," such a claim would fail. (Complaint, PageID 14). *See King v. Harmon*, No. 1:21-cv-P69, 2021 WL 4811299, at *3 (W.D. Ky. Oct. 14, 2021)

18

(dismissing plaintiff's "due process claim against Defendant Deputies . . . for his placement in the 'hole' for less than two months"); *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 344 (6th Cir. 2014) (dismissing civil rights claim that plaintiff was held in segregation for sixty-nine days as "not ris[ing] to a procedural due process violation.").

Accordingly, to the extent that Thompson is raising a due process claim concerning his time in segregation, the Undersigned **RECOMMENDS** that the claim be **DISMISSED**.

IV. **Summary and Conclusion**

Upon initial screening of the Complaint, the Undersigned **RECOMMENDS** that Thompson be permitted to **PROCEED** at this time on his excessive force claim against Skaggs in his individual capacity.

The Undersigned further **RECOMMENDS** that the remaining claims—those against Skaggs in his official capacity, and those alleging a deprivation of personal property, unconstitutional conditions of confinement, the denial of medical care, and the deprivation of liberty—be **DISMISSED** for failure to state a claim on which relief can be granted.

Should the District Judge adopt this recommendation, the Undersigned further **RECOMMENDS** that the District Judge find that any appeal in this matter by Thompson would not be taken in good faith, and that Thompson may not proceed on appeal *in forma pauperis*.

Finally, Thompson is reminded that he must keep this Court informed of his current address and promptly file a Notice of New Address if he is released or transferred to a different institution.

### Procedure on Objections to Report and Recommendation

If any party objects to this Report and Recommendation, that party may, **within fourteen (14) days** of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

May 10, 2022                                           *s/Peter B. Silvain, Jr.*
                                                       PETER B. SILVAIN, JR.
                                                       UNITED STATES MAGISTRATE JUDGE