UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| EDWARD THOMPSON, | : | Case No. 2:22-cv-682 |
| Plaintiff, | : | |
| vs. | : | District Judge James L. Graham |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| JAMES SKAGGS, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

This case is currently before the Court upon Plaintiff Edward Thompson's Motion for Default Judgment (Doc. #19); Defendant James Skaggs' Memorandum Opposing Plaintiff's Motion for Default Judgment (Doc. #25); Plaintiff's Reply (Doc. #28); Defendant's Motion to Set Aside Entry of Default (Doc. #23); Plaintiff's Memorandum Opposing Defendant's Motion to Set Aside Entry of Default (Doc. #26); Defendant's Reply (Doc. #29); Defendant's Motion for Leave to File Answer *Instanter* (Doc. #24); Plaintiff's Memorandum Opposing Defendant's Motion for Leave to File Answer *Instanter* (Doc. #27); and Defendant's Reply (Doc. #30).

**I.     Background**

This case began on February 14, 2022, when *pro se* Plaintiff filed his Complaint and Motion for Leave to Proceed *in forma pauperis*. (Doc. #1). In response to the Court's Order and Deficiency Notice, Plaintiff filed an updated Motion for Leave to Proceed *in forma pauperis*, which the Court granted. (Doc. #s 2-4). Upon initial review of Plaintiff's Complaint, the

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

undersigned recommended that Plaintiff be permitted to proceed with his excessive force claim against Defendant Skaggs in his individual capacity, and that all remaining claims, including any claims against Defendant in his official capacity, be dismissed. (Doc. #6). District Judge Graham adopted the Report and Recommendation. (Doc. #7).

On June 3, 2022, the undersigned directed the United States Marshal to serve Defendant. (Doc. #8). Defendant was served on June 14, 2022. (Doc. #10). His answer was due July 5, 2022. Defendant did not file an answer or responsive motion. On October 6, 2022, the undersigned ordered Defendant to show cause, on or before October 27, 2022, as to why default judgment should not be entered against him under Fed. R. Civ. P. 55(a)-(b). (Doc. #11). Defendant did not respond to the Order to Show Cause.

On December 7 and 8, 2022, counsel for Plaintiff entered their appearances. (Doc. #s 12, 13, 16). On December 8, 2022, Plaintiff requested that the Clerk enter default against Defendant pursuant to Fed. R. Civ. P. 55. (Doc. #s 15, 17). The Clerk of Court entered Default against Defendant on December 12, 2022. (Doc. #18). A few days later, on December 16, 2022, Plaintiff filed Motion for Default Judgment. (Doc. #19).

On December 30, 2022, Defendant's counsel entered their appearances and filed Motion to Set Aside Default and Motion for Leave to File Answer *Instanter*. (Doc. #s 21-24).

**II.     Standard of Review**

Federal Rule of Civil Procedure 55(c) provides that a "court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." In deciding a motion to set aside a clerk's entry of default, the court should consider whether "(1) plaintiff will be prejudiced; (2) defendant has a meritorious defense; and (3) defendant's culpable conduct led to the default." *Marbly v. Dep't of Treasury*, 22 F. App'x 371, 372 (6th Cir. 2001) (citing

2

*Berthelsen v. Kane*, 907 F.2d 617, 620 (6th Cir. 1990); *Shepard Claims Serv., Inc. v. William Darrah & Assoc.,* 796 F.2d 190, 192 (6th Cir. 1986)).  "Although '[a]ll three factors must be considered in ruling on a motion to set aside an entry of default,' when a defendant has a meritorious defense and the plaintiff would not be prejudiced, 'it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead.'"  *United States v. $22,050.00 U.S. Currency*, 595 F.3d 318, 324 (6th Cir. 2010) (quoting *Shepard,* 796 F.2d at 194).  Further, "the factors should be applied more leniently to relieve a party from a procedural entry of default to reflect the strong preference for trial on the merits in federal courts."  *Marbly*, 22 F. App'x at 372 (citing *Shepard*, 796 F.2d at 193-94).

**III.    Discussion**

    *A.    Prejudice*

A court deciding whether to set aside an entry of default should consider "[w]hether the plaintiff will be prejudiced."  *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir. 1983).  "[D]elay alone is not a sufficient basis for establishing prejudice."  *Dassault Systemes, SA v. Childress*, 663 F.3d 832, 842 (6th Cir. 2011) (quotation marks and citation omitted).  "Nor does increased litigation cost generally support entry of default."  *Id*.  "Instead, 'it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'"  *Id.* (quoting *INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 398 (6th Cir. 1987)).

Defendant contends that Plaintiff has not been prejudiced by the delay because the Court has not issued a calendar order or scheduled any status conferences with the parties.  (Doc. #23, *PageID* #124-25).  However, as Plaintiff correctly points out, the Court would not issue a calendar

3

order or schedule a status conference when one of the parties has not filed an answer or otherwise responded. (Doc. #28, *PageID* #199).

Plaintiff asserts that he is prejudiced because the "delay has resulted in potential loss of evidence, creating difficulties of discovery and providing opportunities for collusion." (Doc. #26, *PageID* #162). According to Plaintiff, "[s]ecurity footage of the incident is already absent from Ross Correctional Institution's records – even though the footage was preserved by Defendant Skaggs's shift supervisor after the incident and provided to and reviewed by the Deputy Warden of Operations." *Id.* at 162-63. In support, Plaintiff provided a copy of a response from the Correction Warden Assistant advising that "there [is] no video footage available." (Doc. #26-7, *PageID* #181). However, there is no explanation as to why the video footage is not available. Additionally, Plaintiff did not provide a copy of the request. Without a copy of the request and an explanation of why it is not available, the undersigned cannot reasonably infer that the video footage is permanently lost or that the delay in this case resulted in the loss of evidence. Furthermore, Plaintiff has shown that the delay has provided greater opportunities for collusion. In sum, construing the facts in the light most favorable to Defendant, *see Dassault Systemes*, 663 F.3d at 841, Plaintiff has not demonstrated that he would be prejudiced by setting aside the entry of default against Defendant.

  B. *Meritorious Defense*

The second factor a court deciding whether to set aside an entry of default should consider is whether the defendant has a meritorious defense. *United Coin Meter*, 705 F.2d at 845. "[A] defense is meritorious if it is 'good at law,' regardless of whether the defense is actually likely to succeed on the merits." *$22,050.00*, 595 F.3d at 326 (quoting *Williams v. Meyer*, 346 F.3d 607, 614 (6th Cir. 2003)). "[A]ll that is needed is 'a hint of a suggestion' which, proven at trial, would

constitute a complete defense." *Id.* (quoting *INVST Fin. Grp.*, 815 F.2d at 399); *see Burrell v. Henderson,* 434 F.3d 826, 834 (6th Cir. 2006) (In determining whether a defendant could have a meritorious defense, the court considers whether "there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.") (quoting *Williams,* 346 F.3d at 614).

Defendant asserts that he has three meritorious defenses to Plaintiff's claims of excessive force. (Doc. #23, *PageID* #125). First, as set forth in Defendant's proposed answer, he provides a general denial of the facts alleged by Plaintiff. *Id.* at 125; *see* Doc. #24-1. Second, under the Prison Litigation Reform Act (PLRA), Plaintiff is required to demonstrate that he exhausted his administrative remedies prior to filing this civil action. (Doc. #23, *PageID* #125). According to Defendant, this issue must be investigated. Third, Defendant contends that he "is entitled to avail himself of qualified immunity and should have the opportunity to do so before this Court." *Id.* at 125.

Plaintiff contends that "Defendant Skaggs does not support his general denials or asserted defenses with underlying facts. As such, Defendant Skaggs has not raised a meritorious defense for purposes of reopening the default." (Doc. #26, *PageID* #162) (citing *Victoria's Secret Stores v. Artco Equip. Co.*, 194 F. Supp. 2d 704, 720 (S.D. Ohio 2002); *Toledo Hotel Invs. Ltd. P'ship v. Am. Cont. Designers, Inc.*, 936 F.2d 573 (6th Cir. 1991)).

Although Defendant Skaggs has not provided extensive details regarding his defenses, "even conclusory assertions may be sufficient to establish the 'hint of a suggestion' needed to present a meritorious defense." *Dassault Systemes*, 663 F.3d at 843 (citing *$22,050.00,* 595 F.3d at 326). Plaintiff's Complaint sets forth one excessive force claim against Defendant Skaggs in

5

his individual capacity.[2] "Government officials sued in their individual capacities are entitled to seek qualified immunity." *Wingrove v. Forshey*, 230 F. Supp. 2d 808, 822 (S.D. Ohio 2002)) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). Accordingly, Defendant's ability to raise qualified immunity means that he has a meritorious defense.[3] *See Cain v. U.S. Marshal Brian Rinehart*, No. CV 19-11278, 2020 WL 1181737, at *2 (E.D. Mich. Jan. 22, 2020), *report and recommendation adopted sub nom. Cain v. Rinehart*, No. 19-CV-11278, 2020 WL 1169433 (E.D. Mich. Mar. 11, 2020).

    C.    *Culpable Conduct*

The third factor to consider when deciding whether to set aside an entry of default is whether culpable conduct of the defendant led to the default." *United Coin Meter*, 705 F.2d at 845. "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Shepard*, 796 F.2d at 194. "[M]ere negligence or failure to act reasonably is not enough to sustain a default." *$22,050.00*, 595 F.3d at 327. Where, as here, "a defendant has a meritorious defense and the plaintiff would not be prejudiced, it is an abuse of discretion for a district court to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead." *$22,050.0*0, 595 F.3d at 324 (quotation marks and citation omitted).

Defendant asserts that his lack of response to this civil action was not willful or culpable. (Doc. #23, *PageID* #121). In his declaration, Defendant acknowledges that he received the summons and Complaint in the mail at Ross Correctional Institution (RCI) on June 14, 2022. (Doc.

---

[2] After initial review of Plaintiff's Complaint, the Court determined that Plaintiff's excessive force claim against Defendant Skaggs in his individual capacity could proceed. *See* Doc. #s 6-7. All of Plaintiff's other claims were dismissed. *Id.*
[3] In light of the above discussion, and the undersigned's conclusion that qualified immunity is a meritorious defense, an in-depth analysis of Defendant's other defenses is unwarranted.

6

#23-1, *PageID* #129).  According to Defendant, he took the documents to the business office at RCI to ask what he should do because he had never been sued as a correctional officer employed by the Ohio Department of Rehabilitation and Correction (ODRC).  *Id*.  He was told that someone at the business office would take care of preparing the necessary paperwork that would allow him to request representation from the Office of the Ohio Attorney General.  *Id*.  Defendant "personally was not aware of what was necessary of [him] in order to retain the legal services of the Office of the Ohio Attorney General."  *Id.* at 130.  Defendant also inquired with a labor relation officer and his union representative (who was in the position on a temporary basis) at RCI, and "both individuals informed [him] that [he] 'should not be concerned' about the matter and that it would be handled appropriately by others because [he] had spoken to prison officials within the business office at RCI."  *Id.* at 130.  Defendant states that he did not receive the Court's October 6, 2022 Order to Show Cause (Doc. #11).  *Id*.  Indeed, he was not aware of any legal documents mailed to him at RCI until he received the Application for Default and Entry of Default on December 13, 2022.  *Id*.  The next day, someone within the Warden's Office at RCI assisted Defendant with preparing his request for the Office of the Ohio Attorney General to represent him in this case.  *Id*.  Defendant insists, "It was, and is, never my intention to not comply with the Court's orders or instructions, and I was relying upon the advice and guidance of prison officials and my union representative at RCI in addressing the summons and complaint that was served upon me."  *Id*.

Plaintiff asserts that Defendant's "explanation for his actions is not credible as it is inconsistent, improbable, and contradictory."  (Doc. #26, *PageID* #159) (capitalization omitted).  Specifically, Plaintiff points to Defendant's statement in his declaration that the summons he received with his Complaint indicated that he was being sued in his "official capacity" only.  *Id.* (citing Doc. #23-1, *PageID* #129).  Plaintiff notes that there is no mention of "Official Capacity"

7

on the summons that was enclosed with the Complaint (Doc. #1-3). Plaintiff did indicate "Official Capacity" on a different form he filed, U.S. Marshal Form 285, (Doc. #1-4). That form, however, was not served on Defendant. *See* Doc. #8 (Order directing U.S. Marshal to serve the Complaint (Doc. #5), Summons (Doc. #1-3), Order (Doc. #4), Report and Recommendation (Doc. #6), and the Order adopting the Report and Recommendation (Doc. #26)). Plaintiff asserts, "The only way Defendant Skaggs could have viewed Form 285 and the special instructions section that contains the phrase "Official Capacity" would be by accessing the docket in this case." (Doc. #26, *PageID* #160) (footnote omitted). Plaintiff suggests that if Defendant viewed the docket, he would have seen that no attorney entered an appearance on his behalf and no answer was filed. *Id.* at 160, n. 4. Further, he would have seen the Order to Show Cause. *Id.*

Defendant did not explain where he saw that he was only being sued in his official capacity. However, even if Defendant reviewed the docket and Form 285 when he received the Complaint and summons, he would not have expected to see that an attorney entered an appearance or filed an answer. There is no evidence that Defendant reviewed the docket at any later time. Given the lack of evidence, and viewing the facts in a light most favorable to Defendant, the undersigned finds that Defendant's declaration is not inconsistent in this regard.

Plaintiff also calls into question Defendant's statement that he did not receive the Order to Show Cause. (Doc. #26, *PageID* #106). In his declaration, Defendant stated that he "was never presented, nor was [he] ever made aware of the Court's Order to Show Cause issued on October 6, 2022, by prison officials at RCI." (Doc. #23-1, *PageID* #130). However, the docket for this case indicates that the Order (Doc. #11) was sent to by regular mail to the parties listed in NEF that did not receive electronic notification. That means that because Defendant was not represented by counsel at that time, it should have been mailed to him.

8

Although it is not clear why Defendant Skaggs did not receive this Court's Order to Show Cause, there is no evidence that he received it and intentionally ignored it. Indeed, upon receiving other documents in this case, Defendant Skaggs immediately took them to the individuals at RCI that he believed could assist him. As such, and because the Court "must resolve any doubt in favor of the petition to set aside judgment," it could be that Defendant, as he claims, did not receive a copy of the Order to Show Cause. *Simmons v. Ohio Civ. Serv. Emp. Assoc.*, 210 F.R.D. 207, 209 (S.D. Ohio 2002) (citing *United Coin,* 705 F.2d at 846).

Plaintiff further asserts that Defendant's "prior experience with default judgment demonstrates that his lack of response was a willful, deliberate strategy and displayed reckless disregard for this Court's proceedings." (Doc. #26, *PageID* #156) (capitalization omitted). In 2003, GMAC Mortgage Corporation filed a complaint in foreclosure against Defendant and his former spouse. (Doc. #26-2, *PageID* #169). Neither defendant responded, and upon the plaintiff's motion, the court entered default judgment against both defendants. (Doc. #26-3, *PageID* #s 171-74). After entering into a sale arrangement with the defendants, the plaintiff, GMAC Mortgage Corporation, moved to vacate the judgment entry. (Doc. #26-4, *PageID* #175). Shortly thereafter, the court granted the plaintiff's motion. (Doc. #26-5, *PageID* #177). Plaintiff contends that Defendant "has undertaken the same strategy" in this case. (Doc. #26, *PageID* #157).

Defendant contends that the prior foreclosure action is not representative of his attitude towards the Court and judicial proceedings. (Doc. #29, *PageID* #204). He explains that the "foreclosure action against Mr. Skaggs and his former spouse were only part of a 'short sale' process Mr. Skaggs and his former spouse entered into with his mortgage servicer/provider, i.e., the plaintiff in the foreclosure action. A defendant not entering a formal appearance in a foreclosure action when concurrently engaging in a 'short sale' of one's home is not an uncommon

9

process, as the mortgage provider/plaintiff engages in efforts to protect its interest as part of the 'short sale.'" *Id*. Thus, Defendant asserts, although it may appear from the docket that Defendant was not in compliance with the court, he was cooperating with the plaintiff in that case. *Id.*

Although it is possible to find some similarities between the foreclosure case and this case, there are more significant differences between the two cases. This case, unlike the 2003 foreclosure case, was brought solely against Defendant Skaggs for actions he allegedly undertook in his role as a corrections officer acting under color of state law. As such, rather than seeking out private counsel, Defendant had to request representation from the Office of the Ohio Attorney General. *See* Doc. #29, *PageID* #s 204-05 (citing Ohio Rev. Code §109.36 *et seq.*) Defendant explained that he did not know what was necessary to retain legal services from the Office of the Ohio Attorney General. (Doc. #23-1, *PageID* #130). In light of his inexperience, he proceeded to the business office at RCI to inquire about how to proceed. *Id.* at 129. Defendant also spoke to a labor relations officer and his union representative about case. *Id.* at 130. Defendant's experience as a co-defendant in a foreclosure action in the Ross County Court of Common Pleas would not have prepared him to request counsel in this case.

Further, there is no evidence to support Plaintiff's assertion that Defendant intentionally sought to undertake the "same strategy" in this case. If Defendant sought follow the same strategy he undertook in the foreclosure action, then there would have been no reason for him to speak to anyone else—certainly no one within ODRC—about this case. In sum, although Defendant Skaggs had one prior experience with default judgment, given the significant differences between the cases, the undersigned finds that his prior experience does not establish that his lack of response in this case was a willful and deliberate strategy.

Plaintiff further argues that, despite knowing that he required the advice from an attorney, "Defendant Skaggs was not diligent in his search for counsel." (Doc. #26, *PageID* #158). Instead, Plaintiff asserts, Defendant improperly relied on the advice of non-attorneys, including "an unnamed union representative who was serving as a temp." *Id.* (*citing S. Elec. Health Fund v. Bedrock Servs.*, 146 F. App'x 772, 777 (6th Cir. 2005) (rejecting the appellant's argument that his conduct cannot be labeled culpable because that his business manager for the labor union "told him not to worry about the lawsuit," where appellant was served with a complaint, a motion for entry of default, the entry of default, the motion for temporary injunction, the grant of the temporary injunction, and the motion for a show cause hearing and appellant ignored documents from the court for over eight months)).

However, Defendant did not rely solely on the advice of his union representative and labor relations officer. Instead, as noted above, when he received the Complaint and summons, Defendant attempted to properly address them. Specifically, he took them to the business office at RCI to inquire about what his next steps should be and was told that someone would prepare the necessary paperwork to request representation. (Doc. #23-1, *PageID* #129). When he inquired with the labor relations officer and union representative, they told him he "should not be concerned" and "it would be handled appropriately by others because [he] had spoken to prison officials within the business office …." *Id.* at 130. In other words, they confirmed that because he requested assistance from the business office, he did not need to worry.

Certainly, when Defendant did not receive any further information regarding his representation by the Office of the Ohio Attorney General, he should have followed up with someone from the business office at RCI. To the extent that he did not follow up, he was undoubtedly negligent. However, "[n]egligence or failure to act reasonably is not sufficient to

11

sustain a default judgment." *Matthews v. Owens*, No. 2:13-CV-01071, 2014 WL 4377851, at *5 (S.D. Ohio Sept. 4, 2014) (citing *$22,050.00,* 595 F.3d at 327).

Furthermore, despite Defendant's negligence, it would be an abuse of discretion for the Court not to set aside the entry of default in this case. "Where the party in default satisfies the first two requirements for relief [from entry of default] and moves promptly to set aside the default before a judgment is entered, the district court should grant the motion if the party offers a credible explanation for the delay that does not exhibit disregard for the judicial proceedings." *Shepard*, 796 F.2d at 195. Plaintiff has not demonstrated that Defendant exhibited "disregard for the judicial proceedings." *Id.* Although Defendant had an opportunity to respond to the Complaint in a timely fashion and did not, he did attempt to promptly address the matter by seeking assistance at the business office at RCI. Furthermore, after Plaintiff moved for a default judgment, Defendant quickly sought assistance from the Warden's Office to request representation. Shortly thereafter, Defendant's counsel entered their appearances and moved the Court to vacate Entry of Default. Thus, Defendant's failure to timely respond to the Complaint does not rise to the level of culpability necessary to bar him from establishing good cause to set aside the entry of default. *See $22,050.00*, 595 F.3d at 326-27; *Shepard*, 796 F.2d at 194-95.

Accordingly, Defendant's Motion to Set Aside Entry of Default (Doc. #23) should be **GRANTED**.

In light of the above recommendation to set aside the clerk's entry of default, Plaintiff Edward Thompson's Motion for Default Judgment (Doc. #19) is moot and should therefore be **DENIED**.

*D.     Answer*

In addition to Defendant's request to set aside entry of default, Defendant moves the Court for leave to file his Answer *Instanter* pursuant to Fed. R. Civ. P. 6(b). (Doc. #24). Plaintiff opposes Defendant's Motion. (Doc. #27).

Federal Rule of Civil Procedure 6(b)(1)(B) provides that a court may, for good cause, extend the time to file after the time has expired "if the party failed to act because of excusable neglect." To determine whether excusable neglect exists, the Court must balance five factors: "(1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395, 113 S.Ct. 1489 (1993)).

In this case, the Court finds that these factors weigh in favor of allowing the late filing. As explained above, there is no evidence that Plaintiff has been prejudiced by the delay. Further, although the delay has been lengthy—Defendant moved to file his answer almost six months after it was due—the delay has not significantly impacted these proceedings. Additionally, there is no evidence of bad faith or improper purpose on the part of Defendant. Indeed, as explained above, when Defendant first received the summons and Complaint, he reasonably sought assistance from the business office at RCI to request representation from the Office of the Ohio Attorney General and was told that someone from that office would take care of his request for representation from the Office of the Ohio Attorney General. Unfortunately for Defendant, it appears that no one from the business office completed his request for representation. Then, although the Court issued the Order to Show Cause in October 2022, Defendant did not receive it. In fact, he did not receive

anything from the Court or Plaintiff until December 13, 2022, when he received a copy of Plaintiff's Application for Entry of Default (Doc. #15) and the Clerk's Entry of Default (Doc. #18). Upon receiving those documents, Defendant immediately sought further assistance from the Warden's Office at RCI to request representation from the Office of the Ohio Attorney General. (Doc. #23-1, *PageID* #130). A little more than two weeks later, on December 30, 2023, counsel for Defendant entered their appearances and Defendant moved to set aside entry of default (Doc. #23) and to file his answer (Doc. #24).

However, Defendant's actions in failing to obtain representation from the Office of the Ohio Attorney General are largely the reason for the delay. Further, to the extent that Defendant should have followed up regarding the request for representation, the delay was generally within Defendant's reasonable control. Nonetheless, on balance, these two factors are outweighed by the lack of prejudice to Plaintiff, the lack of adverse effect on the Court's administration of future proceedings in this case, and Defendant's lack of bad faith in filing a late answer. *See Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, No. 2:07-CV-116, 2012 WL 12986643, at *2 (S.D. Ohio Aug. 30, 2012) (citing *Morgan v. Gandalf, Ltd.*, 165 F. App'x 425, 430 (6th Cir. 2006) (affirming a district court's decision to accept the defendants' eight-month-late answer, which was tendered after the close of discovery and after summary judgment motions were filed, because there was no prejudice to the plaintiff, no evidence of bad faith by the defendants, and the defendants "almost certainly" would have been entitled to have any default judgment set aside if the court had not accepted their late answer)).

Accordingly, Defendant's Motion for Leave to File Answer *Instanter* (Doc. #24) should be **GRANTED.**

14

**IT IS THEREFORE RECOMMENDED THAT**:

1. Defendant's Motion to Set Aside Entry of Default (Doc. #23) be **GRANTED**;

2. The Clerk be **ORDERED** to set aside its previous entry of default against Defendant;

3. Plaintiff Edward Thompson's Motion for Default Judgment (Doc. #19) be **DENIED** as moot; and

4. Defendant's Motion for Leave to File Answer *Instanter* (Doc. #24) be **GRANTED**.

July 10, 2023

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).